UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL ("UEFA") FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No. 26-mc-_____ |

**UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL'S *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FROM J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE BANK, N.A., MARY CALLAHAN ERDOES, AND ERIC MENELL FOR USE IN A FOREIGN PROCEEDING**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

I. JPMORGAN'S ROLE IN FFE ........ 3

II. INFORMATION SOUGHT FROM RESPONDENTS ........ 5

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. UEFA SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782 ........ 6

A. Respondents Reside or Are Found Within the District ........ 6

B. The Application Seeks Discovery "For Use" in a Foreign Proceeding ........ 8

C. UEFA Is an "Interested Person" in the Contemplated Foreign Proceeding ........ 11

II. THE *INTEL* FACTORS STRONGLY FAVOR GRANTING THE APPLICATION ........ 11

A. Respondents Are Not Expected to Be Participants in the Foreign Proceeding ........ 12

B. Swiss Courts Are Receptive to Section 1782 Discovery ........ 12

C. UEFA Is Not Circumventing Any Proof-Gathering Restrictions ........ 13

D. The Requested Discovery Is Not Unduly Intrusive or Burdensome ........ 13

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## Cases

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ........................... 6

*Ecoprivate Bus. Ltd. v. Clearing House Payments Co. L.L.C.*, 2023 WL 4848516 (S.D.N.Y. July 28, 2023) ........................................................................................................ 9, 13

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ............................................ 13

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) ........................................................ 6

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ........................................................................ 7

*In re Al-Amodi*, No. 25-mc-375 (RWL) (S.D.N.Y. Sept. 9, 2025) ............................................ 7

*In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ........ 12

*In re Catalyst Managerial Servs. DMCC*, 680 F. App'x 37 (2d Cir. 2017) ................................ 14

*In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361 (S.D.N.Y. 2019)........................ 11

*In re Degens*, 2020 WL 4252725 (S.D.N.Y. July 24, 2020) ..................................................... 7

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ............................................................. 7, 8

*In re Guo*, 965 F.3d 96 (2nd Cir. 2020) ................................................................................ 11

*In re Hansainvestment Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243 (S.D.N.Y. 2018)........... 13

*In re Mammoet Salvage, B.V.*, 2025 WL 3009507 (S.D.N.Y. Oct. 28, 2025)........................... 7, 8

*In re Man Group Ltd.*, 2025 WL 294277 (S.D.N.Y. Jan. 24, 2025)............................................. 6

*In re O2CNI Co., Ltd.*, 2013 WL 4442288 (N.D. Cal. Aug. 15, 2013) ....................................... 11

*In re Porsche Automobil Holding SE*, 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016).................... 12

*In re PT. Bank Woori Saudara Indonesia 1906*, 2026 WL 472772 (S.D.N.Y. Feb. 17, 2026)...... 7

*In re Refinería de Cartagena S.A.S.*, 2024 WL 95056 (S.D.N.Y. Jan. 8, 2024)............................ 9

*In re SPS I Fundo de Investimento de Ações – Investimento no Exterior*, 2024 WL 917236 (S.D.N.Y. Mar. 4, 2024)......................................................................................................... 8

*In re Watkins*, 2024 WL 4264900 (S.D.N.Y. July 26, 2024)........................................... 12, 13, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ..................................... passim

*JPMorgan Chase Bank, N.A. v. Kraus*, No. 25-cv-745 (JMF) (S.D.N.Y. Jan. 24, 2025) .......... 7, 8

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) .......... 9, 14

*Metallgesellschaft AG v. Hodapp*, 121 F.3d 77 (2d Cir. 1997) .......... 6

*Reich v. Lopez*, 858 F.3d 55 (2d Cir. 2017) .......... 8

*Watkins v. Ellesse LLC*, 2024 WL 4582755 (S.D.N.Y. Oct. 25, 2024) .......... 13

**Statutes**

28 U.S.C. § 1782 .......... passim

Swiss Criminal Code art. 158 .......... passim

**Rules**

Fed. R. Civ. P. 26(b)(1) .......... 14

Applicant Union des Associations Européennes de Football ("UEFA") respectfully petitions this Court, *ex parte*, for an order pursuant to 28 U.S.C. § 1782 ("Section 1782"), authorizing UEFA to take discovery from Respondents J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("JPMCB" and, together with JPMS, "JPMorgan"), Mary Callahan Erdoes ("Erdoes"), and Eric Menell ("Menell") for use in a contemplated criminal proceeding to be brought against Gianni Infantino ("Infantino"), the President of Fédération Internationale de Football Association ("FIFA"), in the courts of Switzerland. UEFA further petitions this Court for an order authorizing UEFA to serve JPMS, JPMCB, Erdoes, and Menell with subpoenas *duces tecum* and subpoenas *ad testificandum*, substantially in the form of the proposed subpoenas attached to the Declaration of Edward Y. Kim (the "Kim Declaration" or "Kim Decl.") filed in support of this Application.

**PRELIMINARY STATEMENT**

On July 28, 2026, FIFA publicly announced a plan to consolidate FIFA's commercial rights into a new subsidiary called FIFA Forward Enterprise ("FFE") and sell a minority stake in FFE to private investors. As set forth in UEFA's *Ex Parte* Application for an Order under 28 U.S.C. § 1782 to Obtain Discovery from Thrive Capital Management, LLC and Joshua Kushner for Use in a Foreign Proceeding (the "Thrive Application" or "Thrive App."),[1] filed on August 27, 2026 in this Court, FFE was developed in secret over more than a year by Infantino and a small group of associates. UEFA, the five other FIFA confederations, the FIFA Council—FIFA's main strategic and decision-making body—and even other senior officials at FIFA were

[1] The Thrive Application and its supporting materials are attached to the Kim Declaration as Exhibits 12 through 14. Sections I through V(A) of the Factual Background of the Thrive Application (Kim Decl. Ex. 12) are incorporated by reference herein. In addition, this Application relies on the Declarations of Andrew J. Levander (Kim Decl. Ex. 13) and André Kurz (the "Kurz Declaration" or "Kurz Decl.")) (Kim Decl. Ex. 14) submitted by UEFA in support of the Thrive Application.

kept in the dark. And it is clear why. FFE was a transparently bad deal for FIFA and its members and appears to have been a vehicle to personally enrich Infantino and the other architects of FFE.

Condemnation of FFE was immediate and widespread. UEFA's member associations decided not to participate in any FIFA competition, including the World Cup, unless the plan was withdrawn. Soon after, the Confederation of North, Central America and Caribbean Association Football and the Asian Football Confederation followed suit. Multiple senior officials at FIFA publicly criticized FFE, and one—Carlos Cordeiro, senior advisor to Infantino and the former president of the U.S. Soccer Federation—resigned in protest. Faced with vehement dissent from within and outside of FIFA, including from fans, politicians, and media across the globe, Infantino withdrew the proposal a mere four days after it was announced.

Nevertheless, the secretive structuring, valuation, financing, and marketing of FFE inflicted direct and concrete injury on FIFA's reputation, governance authority, and commercial relationships to the detriment of UEFA and its 55 member associations. Accordingly, and as discussed further below, UEFA is preparing to lodge a criminal complaint in Switzerland against Infantino and possibly other FIFA officials for criminal mismanagement under Article 158 of the Swiss Criminal Code (the "Swiss Proceeding"). Through this Application, UEFA seeks to obtain evidence from JPMorgan and two of its executives for use in the Swiss Proceeding.

As FIFA's advisor on FFE, JPMorgan has critical documents and information related to the project, as do Erdoes and Menell, who oversaw the deal at JPMorgan. As part of its engagement, JPMorgan conducted a valuation of FFE, compiled an investor base, promoted the project, and assessed the project's risk. Accordingly, Respondents possess non-public documents and information concerning the motivations behind the deal, the terms of the deal,

how those terms were communicated, the fairness of the terms to FIFA and its members, and whether Infantino and other architects of the deal stood to gain personally.

For the reasons discussed below, the Application satisfies the statutory requirements of Section 1782, and the factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) support granting the Application.

**BACKGROUND**

UEFA incorporates by reference Sections I through V(A) of the Factual Background of the Thrive Application, which describe the organization and governance of world football, FIFA's history of corruption, the details of the FFE proposal, the fallout from the FFE proposal, and the contemplated Swiss Proceeding. *See* Thrive App. at 4–39. This Application addresses the need for discovery from JPMorgan and its executives, who were closely involved with FFE.

## I. JPMORGAN'S ROLE IN FFE

Earlier this year, FIFA retained JPMorgan as an advisor on the FFE plan. *See* Kim Decl. Ex. 1. According to the *Financial Times*, JPMorgan was "instrumental in the formation of [FIFA's] plans" for FFE and "secretly worked for months" in support of the plan, "alongside Joshua Kushner, brother of [President] Donald Trump's son-in-law Jared Kushner, whose fund Thrive Eternal [was] lined up as the lead investor." Kim Decl. Ex. 4. Within JPMorgan, the deal was overseen by Erdoes, the head of JPMorgan's Asset and Wealth Management line of business, and Menell, JPMorgan's Global Head of Sports Investment Banking, as well as other members of JPMorgan's Sports Investment Banking team.[2] *See id.*; Kim Decl. Ex. 5.

JPMorgan's work on FFE included compiling a "global investor base comprised of sovereign wealth funds, institutional investors, and family offices," pitching the deal, and

[2] According to the FINRA BrokerCheck Reports for Erdoes and Menell, Erdoes is employed by JPMS and JPMCB and Menell is employed by JPMS. *See* Kim Decl. ¶¶ 12–13.

assessing the risk associated with the plan. Kim Decl. Ex. 4; *see also* Kim Decl. Ex. 5. JPMorgan was also tasked with performing a valuation of FFE, although only after FFE "was already well under way." Kim Decl. Ex. 3. As discussed in the Thrive Application, the valuation that was ultimately reached—$20 billion—was demonstrably low, potentially by as much as $10 billion (or more). *See* Thrive App. at 26–30. As FIFA's advisor responsible for valuing the enterprise, JPMorgan has documents and information that will explain how the valuation was reached and the extent of Infantino's influence over the valuation process.

In addition to conducting a valuation and compiling an investor base for FFE, JPMorgan helped pitch FFE to FIFA member associations. JPMorgan's work included the creation, in conjunction with FIFA, of a 25-page pitch deck titled "FIFA Forward Enterprise Member Materials." Kim Decl. Ex. 2. The deck, which bore JPMorgan's logo, and, based on metadata, was prepared by a member of JPMorgan's Sports Investment Banking team, advocated for FFE based on a thesis that FIFA is "undermonetized" relative to other major sports leagues, comparing FIFA's approximately $3.6 billion in annual revenue against the National Football League ($21.2 billion), Major League Baseball ($13.1 billion), and the National Basketball Association ($12.5 billion). *Id.*; *see also* Kim Decl. ¶ 17. However, this was not an apples-to-apples comparison, as the figures from other leagues were "based on club or franchise earnings, rather than [coming from] comparable governing bodies." Kim Decl. Ex. 2. It is not clear whether the undermonetization thesis originated from JPMorgan, Infantino, or others. In addition to the undermonetization thesis, the deck laid out a financial model for FFE, an administrative structure for the new entity, and multi-cycle funding projections, *see* Kim Decl. Ex. 6, indicating that JPMorgan was not only close to the investor side of the deal; it was also involved with structuring FFE and governance matters.

## II. INFORMATION SOUGHT FROM RESPONDENTS

UEFA seeks documents and communications from JPMorgan, Erdoes, and Menell concerning: (i) the origin, formation, structuring, and development of FFE, including communications with Infantino;[3] (ii) JPMorgan's engagement in connection with FFE; (iii) valuation and financial analyses related to FFE, including the implied enterprise valuation of FFE at $20 billion; (iv) due diligence related to FFE; (v) business, investment, and market analyses related to FFE, including risk assessments; (vi) the identities of FFE investors, disclosures to investors, and the terms under which they were to invest; (vii) efforts to obtain approval from member associations and comply with FIFA governance obligations in connection with FFE; (viii) any actual or contemplated benefits to Infantino or any other FIFA officials or employees in connection with FFE; (ix) the timing of and manner in which FFE was disclosed within FIFA and to the public; (x) the withdrawal of FFE and any efforts, discussions, or plans to pursue it in the future; (xi) calls, meetings, and presentations related to FFE; (xii) communications with FIFA, member associations, investors, advisors, and government officials related to FFE; and (xiii) JPMorgan's preservation of relevant materials and use of any ephemeral or auto-deleting messaging application or platform. The specific requests are reflected in full in Exhibits 15, 17, 19, and 21 to the Kim Declaration.

UEFA further seeks the depositions of Erdoes, Menell, and corporate representatives of JPMS and JPMCB on these (and other) topics, as set forth in the proposed subpoenas attached to the Kim Declaration as Exhibits 16, 18, 20, and 22.

## LEGAL STANDARD

Section 1782 authorizes courts to order persons located in the United States to

[3] The proposed subpoenas seek information concerning FFE and any similar proposals, including a 2018 proposal to sell certain FIFA rights, including those associated with the Club World Cup.

produce documents and give testimony for use in foreign legal proceedings. 28 U.S.C. § 1782(a). To obtain discovery under Section 1782, an applicant must first show that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

If these statutory requirements are met, "a district court is free to grant discovery in its discretion." *Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 78 (2d Cir. 1997). The Supreme Court has directed courts exercising their discretion under Section 1782 to consider four factors: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

"District courts routinely grant *ex parte* applications pursuant to Section 1782." *In re Man Group Ltd.*, 2025 WL 294277, at *2 (S.D.N.Y. Jan. 24, 2025); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.").

## ARGUMENT

### I. UEFA SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

#### A. Respondents Reside or Are Found Within the District

The Application satisfies the first statutory requirement because all Respondents

"reside[ ]" or are "found" in the Southern District of New York. 28 U.S.C. § 1782(a). Section 1782's "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). "Accordingly, if the subpoenaed entity is subject to general jurisdiction in this District, it 'resides or is found' here." *In re Degens*, 2020 WL 4252725, at *3 (S.D.N.Y. July 24, 2020). Alternatively, a respondent may be subject to specific jurisdiction for purposes of Section 1782 where "the discovery material sought proximately resulted from the respondent's forum contacts" or "where the respondent's contacts are broader and more significant . . . the evidence sought would not be available but for the respondent's forum contacts." *del Valle Ruiz*, 939 F.3d at 530.

Respondents are subject to general jurisdiction in this District. JPMS and JPMCB are the principal operating subsidiaries of JPMorgan Chase & Co. ("JPMorgan Chase"), which is headquartered in Manhattan. *See* Kim Decl. ¶ 10. JPMorgan Chase is managed on a firmwide basis, rather than on an entity level. *See id.* Thus, Respondents' principal place of business—*i.e.*, their "nerve center," *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010)—is the same as their corporate parent's. Accordingly, JPMS and JPMCB are subject to general jurisdiction in this District and "reside[ ] or [are] found" here for purposes of Section 1782. *See In re PT. Bank Woori Saudara Indonesia 1906*, 2026 WL 472772, at *4 (S.D.N.Y. Feb. 17, 2026) (finding JPMCB subject to general jurisdiction in this District in connection with Section 1782 application); *In re Mammoet Salvage, B.V.*, 2025 WL 3009507, at *10 (S.D.N.Y. Oct. 28, 2025) (same); Order, *In re Al-Amodi*, No. 25-mc-375 (RWL) (S.D.N.Y. Sept. 9, 2025), ECF No. 12 (finding JPMS subject to general jurisdiction in this District in connection with Section 1782 application); Complaint ¶ 11, *JPMorgan Chase Bank, N.A. v. Kraus*, No. 25-cv-745 (JMF) (S.D.N.Y. Jan. 24, 2025), ECF No. 1 (JPMS alleging that its "principal place of business" is New

York).[4] Erdoes and Menell live, work, and are registered to vote in the District. *See* Kim Decl. ¶¶ 12–16. Therefore, they are also subject to general jurisdiction and "reside[ ] or [are] found" here for purposes of Section 1782. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) ("General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'").

Respondents are also subject to specific jurisdiction in connection with this Application. Within JPMorgan, the FFE project was led by Erdoes and Menell, both of whom work out of JPMorgan Chase's headquarters in Manhattan. *See* Kim Decl. ¶¶ 10, 12–13. Erdoes is employed by JPMS and JPMCB, and Menell is employed by JPMS. *See id.* ¶¶ 12–13. Accordingly, the requested discovery, which consists of documents, communications, and testimony relating to Respondents' work on FFE, "proximately resulted from [Respondents'] forum contacts." *del Valle Ruiz*, 939 F.3d at 530; *see also In re SPS I Fundo de Investimento de Ações – Investimento no Exterior*, 2024 WL 917236, at *3 (S.D.N.Y. Mar. 4, 2024) (granting Section 1782 discovery based on specific jurisdiction where "the documents sought . . . resulted from . . . services [respondent] provide[d] from New York").

### B. The Application Seeks Discovery "For Use" in a Foreign Proceeding

UEFA satisfies the second statutory requirement because the requested discovery is "for use in a proceeding in a foreign . . . tribunal." 28 U.S.C. § 1782(a). As discussed in the Thrive Application, UEFA is preparing to lodge a criminal complaint against Infantino (and potentially others) for criminal mismanagement under Article 158 of the Swiss Criminal Code, together with

---

[4] In *JPMorgan Chase Bank, N.A. v. Kraus*, JPMCB alleged that its "principal place of business, *as designated by its articles of incorporation*, is located in Columbus, Ohio." Complaint ¶ 10, *JPMorgan Chase Bank, N.A. v. Kraus*, No. 25-cv-745 (JMF) (S.D.N.Y. Jan. 24, 2025), ECF No. 1 (emphasis added). However, as Judge Liman explained in *Mammoet Salvage*, "[r]egardless of the location it lists in its Articles of Association as its main office, a national bank can be sued in the state where it maintains its principal place of business," which, for JPMCB, is Manhattan. 2025 WL 3009507, at *10.

such further or alternative charges as the developed factual record may support. *See* Thrive App. at 37–39; *see also* Kurz Decl. ¶¶ 2, 15. UEFA intends to use the requested discovery in the Swiss Proceeding, which constitutes "use in a proceeding in a foreign . . . tribunal" within the meaning of Section 1782. 28 U.S.C. § 1782(a) (expressly authorizing Section 1782 discovery for use in "criminal investigations conducted before formal accusation"); *see also Intel*, 542 U.S. at 258 ("The term 'tribunal' includes conventional civil, commercial, criminal, and administrative courts." (citation modified)); *Ecoprivate Bus. Ltd. v. Clearing House Payments Co. L.L.C.*, 2023 WL 4848516, at *3 (S.D.N.Y. July 28, 2023) (granting Section 1782 application seeking evidence for use in contemplated Swiss criminal proceeding). A foreign proceeding need not be "pending" or even "imminent" to satisfy the second statutory requirement, so long as it is "within reasonable contemplation," *Intel*, 542 U.S. at 259, as it is here. *See* Kurz Decl. ¶¶ 2, 15; Thrive App. at 45.

For discovery to be "for use" within the meaning of Section 1782 means only that it "will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). It need not be necessary. *Id.* An applicant must only meet the "*de minimis*" burden of showing that "the requested materials 'can be made use of in the foreign proceeding to increase [the applicant's] chances of success.'" *In re Refinería de Cartagena S.A.S.*, 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024) (quoting *Mees*, 793 F.3d at 299).

The requested discovery is highly relevant to the contemplated Swiss Proceeding. Article 158 of the Swiss Criminal Code provides, in relevant part, that:

> Any person who by law, an official order, a legal transaction or authorisation granted to them, has been entrusted with the management of the property of another or the supervision of such management, and in the course of and in breach of their duties causes or permits that other person to sustain financial loss shall be liable to a custodial sentence not exceeding three years or to a monetary penalty […] If the offender acts with the intention of securing an unlawful gain for themselves or

> another, a custodial sentence not exceeding five years or to monetary penalty shall be imposed.

Swiss Criminal Code art. 158 para. 1; *see also* Thrive App. at 37–38; Kurz Decl. ¶ 20. The requested discovery will address these elements in several respects. First, it will illuminate the breach of duties by Infantino and other FIFA officials—*i.e.*, whether: (i) FFE was developed in a manner consistent with the FIFA Statutes and Governance Regulations, or, as the public record already indicates, was concealed from senior FIFA executives, the FIFA Council, confederations, FIFA's member associations, and the players' representative organization; and (ii) whether the persons acting on FIFA's behalf did so with a view to securing an unlawful gain for themselves or others. *See* Thrive App. at 40–41. As FIFA's advisors who participated in the development, valuation, and promotion of FFE, Respondents are among a small group in a position to know who was consulted about the project and when, and the efforts, if any, of Infantino and others at FIFA to comply with applicable governance requirements. *See id.* at 41.

Second, the requested discovery bears on the financial structuring of the FFE deal. *Id.* at 41. JPMorgan's valuation work is directly probative of whether the $4.2 billion price and approximately $20 billion implied enterprise value reflected an arm's-length valuation of FIFA or, as the public record indicates, a hugely depressed mark produced without independent or formal valuation, competitive process, or comparable-entity benchmarking. *See id.*

Third, a violation of Article 158 is aggravated if the offender acts with "the intention of securing an unlawful gain for themselves or another." Swiss Criminal Code art. 158 para. 1; *see also* Thrive App. at 38; Kurz Decl. ¶ 20. The requested discovery bears on this intent element and on the identity of the beneficiaries of the transaction. Discovery concerning the anticipated returns to the investor group, personal compensation or benefits to Infantino and other FIFA officials, and the political or reputational positioning of the transaction are directly probative of

whether the transaction was structured for the benefit of FIFA and its 211 member associations or for the benefit of a defined group of outside investors and the FIFA officials who negotiated with them. *See* Thrive App. at 41–42.

### C. UEFA Is an "Interested Person" in the Contemplated Foreign Proceeding

UEFA satisfies the third statutory requirement because, as the expected complainant in the Swiss Proceeding, it is an "interested person" for purposes of Section 1782. 28 U.S.C. § 1782(a). UEFA and its 55 members are among FIFA's most significant stakeholders and their commercial and reputational interests are directly and immediately affected by the permanent alienation of an interest in FIFA's commercial enterprise arising from the FFE proposal. UEFA has standing to lodge a criminal complaint under Swiss law and is preparing to do so. *See* Kurz Decl. ¶¶ 15, 23; *see also* Thrive App. at 37–39, 45–46. Accordingly, UEFA is an "interested person" in the Swiss Proceeding. *See Intel*, 542 U.S. at 256 (holding that a "complainant" with the right to "prompt[] an investigation" and "submit information" to a foreign investigative authority "qualifies as an 'interested person' within any fair construction of that term"); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) ("[A] complainant in a criminal investigation satisfies the 'interested person' requirement of § 1782."), *abrogated on other grounds by In re Guo*, 965 F.3d 96 (2nd Cir. 2020); *In re O2CNI Co., Ltd.*, 2013 WL 4442288, at *6 (N.D. Cal. Aug. 15, 2013) (observing that "section 1782(a) covers criminal investigations conducted before formal accusation" and holding that "a victim and complainant [was] an interested party to [a] Korean criminal investigation").

## II. THE *INTEL* FACTORS STRONGLY FAVOR GRANTING THE APPLICATION

The Court should exercise its discretion to grant the Application, as the Application satisfies each of the factors set forth in *Intel*. First, Respondents will not be participants in the

foreign proceeding. Second, Swiss courts are receptive to judicial assistance from U.S. courts. Third, the Application is not an attempt to circumvent proof-gathering restrictions. And fourth, the discovery sought is narrowly tailored and neither unduly intrusive nor burdensome.

**A. Respondents Are Not Expected to Be Participants in the Foreign Proceeding**

The first *Intel* factor favors granting the Application because UEFA does not anticipate that Respondents will be parties to the Swiss Proceeding. *See* Kurz Decl. ¶ 27. Courts are more likely to permit Section 1782 discovery from "nonparticipants in the foreign proceeding" because "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. That is the situation here. JPMorgan, Erdoes, and Menell are outside the jurisdictional reach of the Swiss courts, and if the Application is not granted, it is unlikely that Swiss courts could obtain the requested discovery. *See* Kurz Decl. ¶ 27. Where, as here, "the foreign tribunal [lacks] the ability to control the evidence sought and order production," the first *Intel* factor favors discovery. *In re Porsche Automobil Holding SE*, 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016); *see also In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (finding the first *Intel* factor to favor discovery where "the [requested] materials . . . would be unavailable but for § 1782 assistance").

**B. Swiss Courts Are Receptive to Section 1782 Discovery**

The second *Intel* factor favors granting the Application because Swiss courts are receptive to Section 1782 discovery. Swiss prosecutors and courts routinely receive and rely on evidence obtained through Section 1782 in criminal matters, including in preliminary investigations. Kurz Decl. ¶ 26. Because Swiss courts are receptive to Section 1782 discovery, courts regularly grant Section 1782 applications for use in Swiss proceedings. *See, e.g.*, *In re Watkins*, 2024 WL 4264900, at *9 (S.D.N.Y. July 26, 2024) (finding, based on declaration from

Swiss law expert, that "Swiss courts are receptive to evidence obtained through the use of Section 1782"), *report and recommendation adopted sub nom. Watkins v. Ellesse LLC*, 2024 WL 4582755 (S.D.N.Y. Oct. 25, 2024); *Ecoprivate*, 2023 WL 4848516, at *3 (finding "contemplated actions [to be] an appropriate subject of judicial assistance because there is no indication that the Swiss trial court would not be receptive to discovery obtained through Section 1782"). In the absence of "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," "the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100, 1102 (2d Cir. 1995).

**C. UEFA Is Not Circumventing Any Proof-Gathering Restrictions**

The third *Intel* factor favors granting the Application because UEFA is not trying to bypass foreign discovery procedures. Section 1782 discovery is admissible in Swiss criminal courts, and the Application does not circumvent any proof-gathering restriction or exclusionary rule under Swiss law. Kurz Decl. ¶ 26. Absent "improper or bad faith evasion" of Swiss procedures, this factor weighs in favor of granting Section 1782 discovery. *In re Hansainvestment Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018); *see also In re Watkins*, 2024 WL 4264900, at *9 (finding the third *Intel* factor to weigh in favor of granting Section 1782 application where there was no evidence of bad faith by applicant).

**D. The Requested Discovery Is Not Unduly Intrusive or Burdensome**

The fourth *Intel* factor favors granting the Application because the requested discovery is narrowly tailored and not unduly intrusive or burdensome. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil

Procedure," *Mees*, 793 F.3d at 302, which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends on the relevance of the requested information to the foreign proceeding. *See In re Watkins*, 2024 WL 4264900, at *9 (citing *In re Catalyst Managerial Servs. DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order)).

UEFA seeks only information directly relevant to the contemplated Swiss Proceeding: (i) information concerning the formulation, development, formation, structuring, promotion, and execution of FFE, including communications with Infantino; (ii) information concerning JPMorgan's engagement; (iii) information concerning valuation, modeling, and financial analyses related to FFE; (iv) information concerning due diligence for FFE; (v) business, investment, and market analyses for FFE; (vi) the identity and role of investors and advisors, disclosures to investors, and the terms under which they were to invest; (vii) information concerning member association approval and FIFA governance; (viii) information concerning benefits to Infantino or other FIFA officials or employees; (ix) information concerning the timing and manner of FFE's disclosure, both within and outside of FIFA; (x) information concerning the withdrawal of FFE and any efforts, discussions, or plans to pursue it in the future; (xi) information about calls, meetings, and presentations concerning FFE; (xii) information concerning communications with FIFA, member associations, investors, advisors, and government officials related to FFE; and (xiii) information related to preservation and subpoena compliance. To the extent this Application imposes any burden on Respondents, that burden is minimal: the requested materials should be readily available in electronic form, and any incidental burden of a single deposition for each Respondent is far outweighed by the central importance of this evidence to UEFA's contemplated proceedings.

## CONCLUSION

For the foregoing reasons, UEFA respectfully requests that the Court grant its *ex parte* Application for an Order under 28 U.S.C. § 1782 authorizing discovery from JPMS, JPMCB, Erdoes, and Menell and grant UEFA leave to serve the proposed subpoenas *duces tecum* and subpoenas *ad testificandum* attached as Exhibits 15 through 22 to the Kim Declaration.

Dated: August 28, 2026
New York, New York

Respectfully submitted,

*/s/ Edward Y. Kim*

Edward Y. Kim
Rebecca S. Tinio
Jonathan F. Bolz
KKL LLP
350 Fifth Avenue, 77th Floor
New York, New York 10118
(212) 390-9550
Edward.Kim@KKLllp.com
Rebecca.Tinio@KKLllp.com
Jonathan.Bolz@KKLllp.com

*Counsel for Applicant Union des Associations Européennes de Football (UEFA)*