**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL ("UEFA") FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No. 1:26-mc-00436-AS |

**FIFA (AMERICAS) INC. AND FWC2026 US, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO INTERVENE**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ....................ii

INTRODUCTION .................... 1

BACKGROUND .................... 3

ARGUMENT .................... 6

I. FIFA U.S. IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(A)(2) .................... 9

A. FIFA U.S.'s Motion to Intervene Is Timely .................... 9

B. FIFA U.S. Has a Direct, Substantial, and Legally Protectable Interest in this Application .................... 10

C. Disposition of this Application May Impair FIFA U.S.'s Ability to Protect Its Interests .................... 11

D. No Existing Party Adequately Represents FIFA U.S.'s Interests .................... 12

II. IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO PERMIT FIFA U.S. TO INTERVENE UNDER RULE 24(B) .................... 13

CONCLUSION .................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barnes v. Security Life of Denver Ins. Co.*,
945 F.3d 1112 (10th Cir. 2019) ....................10

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001)....................9

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
2026 WL 1078381 (S.D.N.Y. Apr. 21, 2026)....................9, 10, 12

*Detention Watch Network v. U.S. Immigration & Customs Enf't*,
2016 WL 11793613 (S.D.N.Y. Sept. 1, 2016)....................11

*E.E.O.C. v. Merrill Lynch & Co, Inc.*,
2007 WL 2846361 (S.D.N.Y. Sept. 26, 2007)....................9

*In re Application of Grupo Unidos por el Canal S.A.*,
2015 WL 1815251 (N.D. Cal. Apr. 21, 2015) ....................14

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*,
2014 WL 3404955 (S.D.N.Y. July 9, 2014) ....................7

*In re Harbour Victoria Inc. Holdings Ltd. Section 1782 Petitions*,
2015 WL 4040420 (S.D.N.Y. June 29, 2015) ....................7

*In re Jagodzinski*,
2019 WL 1112389 (S.D. Fla. Jan. 15, 2019) ....................8

*In re Polymer Solutions Int'l, Inc.*,
2019 WL 1239778 (D. Md. Mar. 18, 2019)....................11

*In re Postalis*,
2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ....................8

*In re Sargeant*,
278 F. Supp. 3d 814 (S.D.N.Y. 2017)....................6

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....................2, 6, 8,10

*Rep. of the Phil. v. Abaya*,
312 F.R.D. 119 (S.D.N.Y. 2015) ....................12

*Securities and Exchange Comm'n v. Berman*,
2021 WL 2895148 (S.D.N.Y. June 8, 2021) ....................13

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
596 U.S. 619 (2022)....................6

*100Reporters LLC v. U.S. Dep't of Justice*,
307 F.R.D. 269 (D.D.C. 2014)....................11

**Statutes**

28 U.S.C. § 1782.................... *passim*

Swiss Criminal Code, art. 158 ....................7

**Rules**

Fed. R. Civ. P. 24.................... *passim*

**Other Authorities**

FIFA Code of Ethics Part I, art. 1 (2023) ....................3

FIFA (AMERICAS), Inc. and FWC2026 US, Inc. (together, "FIFA U.S.") respectfully move pursuant to Fed. R. Civ. P. 24 to intervene in this matter to request that the Court defer ruling of Union des Associations Européennes de Football's ("Petitioner" or "UEFA") application for an order under 28 U.S.C. § 1782 authorizing broad discovery for use in purportedly contemplated (but non-existent) Swiss criminal proceedings. The nearly identical application is being briefed in the Southern District of Florida. Alternatively, FIFA U.S. requests that the Court permit it to oppose the application no later than September 30, 2026.

## INTRODUCTION

UEFA has filed four § 1782 applications across three jurisdictions. They all seek information related to the FIFA Forward Enterprise ("FFE"), a plan proposed by Fédération Internationale de Football Association ("FIFA")—an association of national football associations organized under Swiss law and headquartered in Zürich, Switzerland—that would consolidate certain commercial and operational functions within a new FIFA-controlled entity.

While these applications are styled as legal pleadings with captions and docket numbers,[1] they are little more than press releases in further support of UEFA's smear campaign against FIFA and its leadership. That is clear from UEFA's decision to alert the media before filing these applications, from the countless paragraphs of the application supported only by references to press reports (many of which quote UEFA), and from the fact that UEFA's

[1] ECF No. 1, *In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA")*, No. 1:26-mc-00436-AS (S.D.N.Y. filed Aug. 28, 2026); ECF No. 1, *In re Application of Union des Associations Européennes de Football ("UEFA")*, No. 1:26-mc-00158-NYW-TPO (D. Colo. filed Aug. 27, 2026) (hereinafter "Colo. ECF"); ECF No. 1, *In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA")*, No. 1:26-mc-25872-JEM (S.D. Fla. filed Aug. 27, 2026) (hereinafter "Fla. ECF"); ECF No. 1, *In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA")*, No. 1:26-mc-00431-JAV (S.D.N.Y. filed Aug. 27, 2026) (hereinafter "Thrive et al. NY ECF").

application suffers from a fundamental defect: UEFA seeks discovery in aid of a foreign criminal proceeding that does not exist and that UEFA admittedly lacks the authority to initiate. Despite that threshold problem, UEFA asks this Court to authorize sweeping discovery about the FFE from at least four New York citizens who allegedly advised on the proposed transaction—J.P. Morgan Securities LLC, JPMorgan Chase Bank, N.A., Mary Callahan Erdoes, and Eric Menell—that are not the subject of the Switzerland-focused allegations set forth in its application.

This Court is not the first to address such an application. UEFA filed a substantially similar application in the Southern District of Florida to seek discovery from FIFA U.S. FIFA U.S. presented these facial deficiencies to that court, and it granted FIFA U.S.'s motion to oppose the application, due on or before September 28, 2026. Fla. ECF 20. The application before this Court concerns the same proposed transaction, the same alleged misconduct, the same purportedly contemplated proceedings, substantially the same categories of discovery, and, critically, it suffers from the same legal deficiencies.

FIFA U.S.'s motion to intervene should be granted because it has a direct interest in whether and under what conditions Petitioner's application proceeds. First, as a subsidiary of FIFA, FIFA U.S. is the entity best positioned to explain why the application fails to meet the statutory requirements of § 1782 and the discretionary factors set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), with reference to principles of Swiss law.

Second, disposition of UEFA's application here without FIFA U.S.'s participation may result in inconsistent treatment of the same legal issues, the same documents and communications, duplicative discovery, and disclosure of FIFA's confidential business information without an opportunity for FIFA U.S. to be heard. That risk is especially serious because UEFA seeks to use the legal process and public U.S. filings to expose information that it

is obligated to keep confidential under FIFA's governing rules.[2] FIFA U.S. is best positioned to explain those obligations, the Swiss-law limits on UEFA's theory, and the relationship between this proceeding and the other parallel proceedings in which UEFA has sought relief under 28 U.S.C. § 1782.

FIFA U.S. therefore should be permitted to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, should be permitted to intervene under Rule 24(b)(1)(B). FIFA U.S. also requests that the Court defer consideration of the application until such time as the Southern District of Florida rules on UEFA's parallel application for discovery from FIFA U.S. Deferring consideration will conserve judicial (and party and non-party) resources, avoid the inefficiency of having multiple courts consider the same issues, and avoid the risk of inconsistent rulings. In the alternative, FIFA U.S. requests that the Court permit FIFA U.S. to oppose UEFA's application no later than September 30.

## BACKGROUND

In July 2026, FIFA proposed the FIFA Forward Enterprise ("FFE"), a plan that would consolidate certain commercial and operational functions within a new FIFA-controlled entity. *See* ECF No. 2-20 at 12-17. The purpose of FFE was to "increase[] funding available to all 211 FIFA Member Associations," which would be used to "support infrastructure, coaching, national teams, competitions, grassroots football, and the women's game." *See id.* at 13–14. All of this was meant to "invest heavily even in the smallest or most remote parts of the footballing world, places that are too often passed over." *Id.* at 15.

---

[2] Under FIFA's Code of Ethics, "information of a confidential nature . . . shall be treated as confidential or secret by them, if the information is given with the understanding or communication of confidentiality and is consistent with FIFA principles." *See* FIFA Code of Ethics Part II, art. 17 (2023). UEFA is bound by that provision, as well as applicable laws and regulations concerning confidential information. *See also* FIFA Code of Ethics Part I, art. 2 (2023).

FIFA made clear that FFE was only a proposal. As communicated by FIFA, the proposal could proceed only upon satisfaction of two cumulative conditions: "the support of a majority of [Member Associations]" and "the relevant approvals of the FIFA Council." *See id.* at 14.

Rather than participate in that democratic process, UEFA issued a press release—the beginning of a weeks-long smear campaign against FIFA and its leadership. UEFA accused FIFA of "governance by intimidation" and characterized FFE as an "act of coercion." *See* ECF No. 2-20 at 53. UEFA further announced that "no UEFA national teams will participate in any FIFA competition for so long as these proposals remain alive." *See id.* Put another way, UEFA threatened to boycott all FIFA competitions by withholding the participation of its 55 national associations.

UEFA's economic motivation was to prevent smaller countries from having the financial strength to compete with the European elite. If soccer is strengthened in the developing world, global competition increases, which ultimately reduces UEFA's market power and provides more competition for its flagship tournaments. By raising funds to allow some of FIFA's smaller member associations to better develop soccer, FFE would lead to more players from those nations choosing to represent their countries of origin and playing in their home leagues rather than playing abroad. All of this would erode UEFA's dominance over other regions of the world. As noted by Samuel Eto'o, one of the greatest African soccer players in history, FFE would have been "very good for the African nations, because it would allow us -- should allow us if it went all the way through -- to truly compete with the big nations . . . [T]his project was something that could have been incredible. It would have reset the balance of power in football to ensure that our talent doesn't

disappear and end up playing for other nations."[3] Potential investor Joshua Kushner reflected the same sentiment: "Money in football has historically been concentrated amongst a small group of countries. The idea behind FFE was to direct more capital and equity equally amongst all 211 member countries, providing significantly more investment to underdeveloped nations to nurture local talent, support grassroots football, enhance the fan experience, and ultimately grow the global game everywhere."[4]

UEFA's conduct ultimately resulted in FIFA withdrawing its proposal. *See* ECF No. 2-26 at 60-62. Indeed, on July 31, 2026, FIFA's President publicly confirmed that the FFE project would not proceed. The proposal was therefore withdrawn from consideration by the Member Associations and the FIFA Council and abandoned.

Nevertheless, UEFA's smear campaign did not end when its boycott threats and press assault led to withdrawal of the proposal. It continued in the form of public accusations and § 1782 filings aimed at tarnishing FIFA and its executives. Section 1782 applications have now been filed in Colorado, Florida, and New York all seeking expansive discovery concerning FFE and FIFA's leadership. *See supra* n.1. In addition to this application, UEFA filed the Florida application seeking to serve discovery on FIFA U.S., an application in Colorado seeking to serve discovery on BANN Ventures, Inc. ("BANN"), BANN's related entities, and BANN's founder, Gregory B. Maffei, and another application in the Southern District of New York, seeking to serve discovery on Thrive Capital Management, LLC, its related entities, and Joshua Kushner. *See id.*

---

3 *Samuel Eto'o: Gianni Infantino Was Not Wrong to Propose FIFA Private Investment*, ESPN (Apr. 24, 2026), https://www.espn.com/soccer/story/_/id/49712649/samuel-etoo-gianni-infantino-private-equity-proposal-fifa-president.

4 *Thrive Capital's Josh Kushner Hits Out at "Political Dynamics" of Scrapped $20B FIFA Deal*, N.Y. POST (Aug. 31, 2026), https://nypost.com/2026/08/31/business/thrive-capitals-josh-kushner-hits-out-at-political-dynamics-of-scrapped-20b-fifa-deal/.

All four applications seek this discovery for the same stated purpose: for use in purportedly contemplated Swiss criminal proceedings concerning FFE. *See* ECF No. 1 at 5–9, 12-15; Thrive et al. NY ECF No. 1 at 42–47; Colo. ECF No. 1-2 at 50–54; Fla. ECF No. 1 at 45–49. All four applications concern the same alleged conduct, the same purported proceedings, and substantially the same categories of evidence. *See id.* Yet, no Swiss criminal proceedings currently exist, and UEFA admits it lacks authority to initiate any.

**ARGUMENT**

As relevant context to FIFA U.S.'s motion to intervene, and why FIFA U.S. is uniquely positioned to present its arguments to the Court, it is important to briefly set out the legal deficiencies of UEFA's application.

To obtain relief under § 1782, UEFA must first satisfy the requirements set out in the statute. *See In re Sargeant*, 278 F. Supp. 3d 814, 819 (S.D.N.Y. 2017). Courts also consider the discretionary factors set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). UEFA satisfies neither the mandatory nor the discretionary factors.

*First*, UEFA fails to satisfy the statutory factors of § 1782. Section 1782 authorizes discovery only when, among other things, the requested materials are sought "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). UEFA identifies no such proceeding. Under the FIFA Statutes, UEFA is contractually obligated to arbitrate any disputes with FIFA. *See* FIFA Statutes, art. 51 (2024). But the Supreme Court has held that § 1782 discovery cannot be "for use" in aid of arbitration. *See ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632-33 (2022). No doubt aware of this per se bar on its request, UEFA instead seeks to recast what is fundamentally an arbitral dispute with FIFA as a basis for "contemplated Swiss criminal proceedings" while simultaneously acknowledging that it lacks authority to commence any such criminal proceedings. UEFA Br. at 4; ECF 2-28 ¶¶ 22-23, 25. Indeed, UEFA's own

Swiss-law expert confirms that UEFA can do no more than report alleged conduct to Swiss authorities, which alone decide whether to investigate, whom to investigate, and whether to pursue charges. *Id.* In other words, faced with the unavailability of § 1782 discovery in arbitration, UEFA attempts to manufacture a qualifying proceeding by repackaging what it previously described as a dispute potentially giving rise to "legal action, arbitration, and/or regulatory complaints" as speculative criminal allegations that no prosecutor has adopted and that UEFA itself lacks authority to pursue. *See* ECF No. 2-26 at 48-53. UEFA should not be permitted to take discovery under § 1782 with such a speculative connection to any legal proceeding.

UEFA also fails to explain how this discovery could be "for use" in a criminal proceeding when the basic elements of the alleged offense are absent. UEFA's theory is premised on Article 158 of the Swiss Criminal Code, which, as UEFA admits, requires the "other person" here, UEFA, to have "sustain[ed] financial loss." UEFA Br. at 43. But FIFA withdrew the FFE proposal, and UEFA sustained no financial loss, or any other harm. In short, this statutory factor is not met, and UEFA cannot use § 1782 as part of a "fishing expedition," hoping to uncover material that will support its outlandish theories. *In re Harbour Victoria Inc. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420, at *7 (S.D.N.Y. June 29, 2015); *see also In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14-cv-1801, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (denying application where the applicant had not commenced foreign proceedings and appeared to seek materials to "investigate whether litigation is possible in the first place, putting the cart before the horse").

*Second*, the discretionary *Intel* factors likewise weigh against granting the application. By way of example, it is inappropriate under the *Intel* factors for applicants to use § 1782 to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or

the United States." *Intel*, 542 U.S. at 265. UEFA is attempting to do just that. UEFA's complaints revolve around Swiss entities and events. UEFA never explains why it bypassed the Swiss authorities it says would control any criminal process and instead came first to a U.S. court. That unexplained choice "raises the specter of abusive litigation tactics" and weighs heavily against UEFA's application. *See In re Jagodzinski*, No. 18-20606, 2019 WL 1112389, at *7-8 (S.D. Fla. Jan. 15, 2019) (denying § 1782 application in part due to the applicant's "failure to provide a reasonable explanation for [the applicant's] decision to first seek assistance from a United States federal court to obtain discovery—without first attempting to have the French tribunal overseeing his foreign proceeding rule on same"), *report and recommendation adopted*, No. 18-20606-CIV-WILLIAMS, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019). It also raises the concern that § 1782 is being used not to obtain evidence for a genuine foreign proceeding, but "for the purpose of harassment." *In re Postalis*, No. 18-mc-497, 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018) (internal quotation marks omitted). UEFA leaked its application to the media before FIFA was notified and seeks sweeping discovery in aid of proceedings that do not exist. That conduct is consistent with UEFA's broader campaign against FIFA and its leadership, not a good-faith effort to obtain evidence for use in a qualifying foreign proceeding.

With that background, FIFA U.S.'s motion should be granted for two reasons. First, as the U.S. subsidiary of FIFA, FIFA U.S. is the only entity capable of presenting FIFA's interest in the purported Swiss criminal proceedings. Second, UEFA seeks substantially overlapping discovery, through a coordinated series of § 1782 applications concerning the same alleged conduct and purported contemplated proceedings. FIFA U.S. is already defending the parallel Florida application and is directly affected by any ruling about the same documents and

communications at issue here. The application before this Court therefore cannot fairly be adjudicated without hearing from FIFA U.S.

## I. FIFA U.S. Is Entitled to Intervene as a Matter of Right

Rule 24(a)(2) provides that, upon a timely motion, a court must permit intervention by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

A non-party seeking to intervene as of right under Rule 24(a)(2) must satisfy four criteria: "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 1:22-cv-08842, 2026 WL 1078381, at *4 (S.D.N.Y. Apr. 21, 2026) (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001)). Each requirement is satisfied here.

### A. FIFA U.S.'s Motion to Intervene Is Timely

FIFA U.S.'s motion is timely. UEFA filed the application before this Court on August 27, 2026. *See* ECF No. 1. FIFA U.S. is moving to intervene only days later, before the Court has ruled on the application. This proceeding is at its preliminary stages, and no merits determination has been made. Under these circumstances, courts routinely find intervention timely. *See E.E.O.C. v. Merrill Lynch & Co, Inc.*, No. 07-cv-6017, 2007 WL 2846361, at *1 (S.D.N.Y. Sept. 26, 2007) ("In this case, there is no question that the Motion to Intervene is timely since it was filed less than two months after this suit commenced.").

### B. FIFA U.S. Has a Direct, Substantial, and Legally Protectable Interest in this Application

Courts in this district require that a proposed intervenor's interest is "direct, substantial, and legally protectable." *Citibank, N.A.*, 2026 WL 1078381, at *4 (internal quotation marks omitted). That inquiry "is a highly fact-specific determination," and the interest test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Barnes v. Security Life of Denver Ins. Co.,* 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted).

FIFA U.S. easily satisfies that standard. UEFA seeks discovery for use as evidence against FIFA in purported Swiss criminal proceedings and seeks FIFA-related communications and business information, the disclosure of which would directly threaten FIFA's interests and reveal sensitive and proprietary information. FIFA U.S.'s legally protectable interest arises from its role in presenting those interests in the United States, including through the parallel Florida proceeding. As FIFA's U.S. subsidiary, FIFA U.S. is best positioned to present those interests, including by making objections based on confidentiality, Swiss law, the § 1782 statutory requirements, and the *Intel* factors.

As noted above, FIFA U.S. is already defending a parallel § 1782 application in the Southern District of Florida arising from the same alleged conduct and seeking discovery for the same contemplated Swiss criminal proceedings. *See* Fla. ECF No. 1 at 45–49. UEFA's application here and in Florida concern the same proposed transaction, the same allegations, and many of the same documents and communications. *Compare* ECF Nos. 1 at 7-9, 2-31 at 5–16 *with* Fla. ECF Nos. 1 at 46–49, 1-1 at 1311–21. FIFA U.S. therefore has a direct interest in how this Court evaluates discovery requests that substantially overlap with requests UEFA is simultaneously pursuing against FIFA U.S. elsewhere.

UEFA's application before this Court also seeks far more than Respondents' independent business records. UEFA seeks communications involving FIFA, FIFA President Gianni Infantino, numerous named FIFA personnel, FIFA advisors, and other documents concerning FIFA and the FFE proposal. *See* ECF No. 2-31 at 5–16. The application therefore directly implicates FIFA-related communications, sensitive, confidential and proprietary business information, and records concerning the same subject matter for which UEFA seeks discovery from FIFA U.S. in Florida. *See* Fla. ECF No. 1.

Courts routinely recognize that a party whose documents, communications, confidential information, or litigation interests are directly implicated by a § 1782 application possesses a sufficient interest to intervene and be heard regarding the propriety and scope of the requested discovery. *See, e.g.*, *In re Polymer Solutions Int'l, Inc.*, No. DKC 18-1864, 2019 WL 1239778, at *2–3 (D. Md. Mar. 18, 2019) (finding "significantly protectable interest," because the § 1782 application sought information that "could potentially be used in litigation against" the intervenor, and observing that "other courts have recognized a party's right to intervene where the information sought by its opponent under a § 1782 application may be used against them"); *Detention Watch Network v. U.S. Immigration & Customs Enf't*, 14 Civ. 583, 2016 WL 11793613, at *3 (S.D.N.Y. Sept. 1, 2016) ("[P]reventing the disclosure of commercially-sensitive and confidential information is a well-established interest sufficient to justify intervention under Rule 24(a)." (quoting *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 275 (D.D.C. 2014)).

**C. Disposition of this Application May Impair FIFA U.S.'s Ability to Protect Its Interests**

Rule 24(a)(2)'s impairment requirement requires the proposed intervenor to "show that his interest may be impaired by the disposition of the action, which can be satisfied by asserting that as a practical matter, an adverse decision may compromise the party's claims." *See*

*Rep. of the Philippines v. Abaya*, 312 F.R.D. 119, 124 (S.D.N.Y. 2015). That requirement is readily satisfied here.

The impairment of FIFA U.S.'s ability to protect its interests arises in two forms. First, the application before this Court seeks discovery that overlaps with requests pending against FIFA U.S. in Florida, creating a risk of duplicative production, inconsistent treatment, and disclosure before FIFA U.S. can be heard. Second, the requested materials include FIFA's sensitive, confidential and proprietary business communications and information.

If discovery is authorized from this Court without FIFA U.S.'s participation, the Court may evaluate requests seeking FIFA-related communications, transaction documents, and sensitive business information without FIFA U.S. having an opportunity to protect and present FIFA's interests. That risk is not merely theoretical. UEFA seeks many of the same documents and communications through parallel proceedings, creating the possibility that substantially similar requests will receive inconsistent treatment without either court being fully informed of how those requests are being pursued and addressed elsewhere. Absent intervention, discovery concerning the same materials and subject matter could be adjudicated before this Court without the participation of the party already responding to parallel requests in Florida. Rule 24(a)(2) exists precisely to avoid that result.

**D. No Existing Party Adequately Represents FIFA U.S.'s Interests**

Rule 24(a)(2)'s adequacy requirement is "minimal." *Citibank, N.A.*, 2026 WL 1078381, at *5. An applicant need show only that representation of its interests by the existing parties "may be" inadequate. *See id*. That standard is easily satisfied here.

Respondents do not adequately represent FIFA U.S.'s interests. Respondents' concern is with their own records, production obligations, and testimony. FIFA U.S.'s interests arise from its role in presenting FIFA's substantively threatened interests, including confidentiality

interests, the availability of Swiss procedures and mutual legal-assistance channels, the risk of circumvention and harassment, and the parallel Florida application that FIFA U.S. is already defending. Respondents do not share those interests and cannot be expected to advance them.

More importantly, FIFA is the only party who will be substantially affected by the outcomes of these applications. As FIFA's subsidiary, FIFA U.S. is the only party capable of articulating those interests such as objections under Swiss law and the release of confidential FIFA business documents.

## II. IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO PERMIT FIFA U.S. TO INTERVENE UNDER RULE 24(B)

Even if the Court concludes that intervention as of right is unavailable, it should exercise its discretion to permit intervention under Rule 24(b). Rule 24(b)(1)(B) provides that a court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is committed to the Court's discretion. *See Secs. and Exch. Comm'n v. Berman*, No. 20-cv-10658, 2021 WL 2895148, at *1 (S.D.N.Y. June 8, 2021). In exercising that discretion, courts consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights." *Id*. (quoting Fed. R. Civ. P. 24(b)(3)).

Those considerations strongly favor intervention. FIFA U.S.'s proposed opposition shares common questions of law and fact with the application before this Court because it concerns the same alleged conduct, the same purported contemplated Swiss criminal proceedings, and substantially the same categories of discovery. *See* ECF No. 1 at 7-9, 6-15; Fla. ECF No. 1 at 45–49. FIFA U.S. is already defending the parallel Florida application, which seeks many of the same documents and communications at issue here. *See* Fla. ECF No. 16. FIFA U.S. therefore can provide the Court with information directly relevant to the scope of UEFA's discovery campaign,

the overlap between the application here and in Florida, and the practical consequences of adjudicating substantially duplicative requests in separate proceedings.

Intervention will not cause delay or prejudice. FIFA U.S. moved promptly after UEFA filed its application, before Respondents have appeared and before any ruling has been issued. *See* ECF No. 1. FIFA U.S. does not seek to inject an unrelated dispute into this case. It seeks only the opportunity to be heard on an application that directly implicates its interests and substantially overlaps with discovery already sought from FIFA U.S. in Florida. *See* Fla. ECF No. 1. Under these circumstances, permissive intervention will assist the Court's consideration of the application without prejudicing any party. *See In re Application of Grupo Unidos por el Canal S.A.*, No. 14-mc-80277, 2015 WL 1815251, at *4–6 (N.D. Cal. Apr. 21, 2015) (granting permissive intervention in a § 1782 proceeding where the proposed opposition shared common questions with the application and the applicant failed to identify credible prejudice or undue delay). The Court therefore should permit FIFA U.S. to intervene under Rule 24(b).

## CONCLUSION

For the foregoing reasons, FIFA U.S. respectfully requests that the Court grant its motion to intervene and defer adjudication of the application pending the outcome of UEFA's substantially identical application in the Southern District of Florida, or in the alternative, permit FIFA U.S. to oppose the application no later than September 30.

Dated: New York, New York
September 1, 2026

Respectfully submitted,

By: */s/ H. Christopher Boehning*

H. Christopher Boehning
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
chris.boehning@linklaters.com

*Counsel for proposed Intervenors FIFA (AMERICAS) Inc. and FWC2026 US, Inc.*

**CERTIFICATION**

I hereby certify that the number of words in this memorandum of law is 4,320, excluding the caption, table of contents, table of authorities, and signature block; that this number was reached by reliance on a word counter of the word-processing program used to prepare the document; and that this complies with the Court's word count limit.

Dated: New York, New York
September 1, 2026

Respectfully submitted,

By: *_/s/ H. Christopher Boehning_*

H. Christopher Boehning
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
chris.boehning@linklaters.com

*Counsel for proposed Intervenors FIFA (AMERICAS) Inc. and FWC2026 US, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2026, I electronically filed this Memorandum of Law with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned matter.

*/s/ H. Christopher Boehning*
H. Christopher Boehning