UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL ("UEFA") FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No. 26-mc-436 (JAV)<br>[rel. 26-mc-431 (JAV)] |

**APPLICANT UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FROM J.P. MORGAN SECURITIES LLC, JPMORGAN CHASE BANK, N.A., MARY CALLAHAN ERDOES, AND ERIC MENELL FOR USE IN A FOREIGN PROCEEDING**

# TABLE OF CONTENTS

ARGUMENT ..... 1

I. UEFA SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782 ..... 1

A. The Discovery Is "For Use" in a Foreign Proceeding ..... 1

i. The Swiss Proceeding Is Reasonably Contemplated ..... 1

ii. The Discovery Will Be Received in the Swiss Proceeding ..... 4

B. UEFA Is an "Interested Person" in the Swiss Proceeding ..... 6

II. THE INTEL FACTORS WEIGH IN FAVOR OF THE APPLICATION ..... 7

A. Respondents Are Not Expected Participants in the Swiss Proceeding ..... 7

B. The Application Does Not Seek to Circumvent Swiss Restrictions ..... 8

C. The Subpoenas Are Not Unduly Intrusive or Burdensome ..... 9

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) .......... 5

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015).......... 5, 7

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) .......... 4

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136 (2d Cir. 2022) .......... 8

*Frasers Grp. PLC v. Stanley*, 95 F.4th 54 (2d Cir. 2024).......... 8

*Freedman v. Weatherford Int'l Ltd.,* 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014) .......... 11

*IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669 (2d Cir. 2022).......... 2, 3

*In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Procs.*, 773 F.3d 456 (2d Cir. 2014) .......... 2, 5, 6

*In re Brookfield Infrastructure Partners L.P.*, 2025 WL 1503942 (S.D.N.Y. May 27, 2025) .......... 7

*In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361 (S.D.N.Y. 2019).......... 6, 10

*In re Guo*, 965 F.3d 96 (2nd Cir. 2020). .......... 6

*In re Guryeva-Motlokhov*, 2026 WL 861084 (2d Cir. Mar. 30, 2026) .......... 3

*In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243 (S.D.N.Y. 2018). .......... 8

*In re Refinería de Cartagena S.A.S.*, 2024 WL 95056 (S.D.N.Y. Jan. 8, 2024).......... 4

*In re Tiberius Grp. AG*, 2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020).......... 8

*In re Top Matrix Holdings Ltd.*, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020).......... 2

*In re Youngpoong Corp.*, 2025 WL 3228034 (S.D.N.Y. Nov. 19, 2025).......... 9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) .......... passim

*Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018).......... 8

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) .......... passim

*Mangouras v. Squire Patton Boggs*, 980 F.3d 88 (2d Cir. 2020) .......... 2

*Sabre v. First Dominion Cap., LLC*, 2001 WL 1590544 (S.D.N.Y. Dec. 12, 2001).......... 11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004).......... 8

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009) ...... 11

**Statutes**

28 U.S.C. § 1782 ........ passim

Swiss Criminal Code art. 158 ........ 4

Swiss Criminal Procedure Code art. 301 ........ 3, 5

**Treatises**

Treaty on Mutual Assistance in Criminal Matters, U.S.-Switz., May 25, 1973, 27 U.S.T. 2019, T.I.A.S. No. 8302 ........ 7, 8

In their Opposition ("Opp."), Respondents try to rewrite both Section 1782 and Swiss procedure.[1] With respect to Section 1782's statutory requirements, Respondents insist that UEFA must have a level of control over the Swiss Proceeding that Section 1782 does not require. With respect to the *Intel* factors, Respondents wrongly claim to be *de facto* participants in the Swiss Proceeding, allege circumventions of Swiss law without identifying any Swiss prohibition on obtaining or using the requested discovery, and assert burden without evidence to support it. When Swiss procedure and the requirements of Section 1782 are accurately presented, the correct result is clear: the Court should grant the Application.

## ARGUMENT

## I. UEFA SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

The Application satisfies Section 1782's statutory requirements.[2] *See* App. at 6–11. The Court should reject Respondents' arguments, which misconstrue both U.S. and Swiss law.

### A. The Discovery Is "For Use" in a Foreign Proceeding

Respondents argue that the requested discovery is not "for use" in the Swiss Proceeding, first contending that, because Swiss prosecutors may reject UEFA's complaint, the Swiss Proceeding is not reasonably contemplated. Second, Respondents contend that UEFA lacks sufficient participatory rights in the Swiss Proceeding. Both arguments fail.

#### i. The Swiss Proceeding Is Reasonably Contemplated

As Respondents concede, Opp. at 12–13, a foreign proceeding need not be pending or

---

[1] Unless otherwise stated, capitalized terms and acronyms have the meanings assigned in UEFA's Application (the "Application" or "App."). In addition to materials cited in the Application, this Reply relies on the Declaration of Jonathan F. Bolz (the "Bolz Declaration" or "Bolz Decl.") and Supplemental Declaration of André Kurz (the "Supp. Kurz Decl."), which is Exhibit 1 to the Bolz Declaration.

[2] Respondents concede the first statutory requirement. *See* Opp. at 12 n.15.

even imminent at the time of a Section 1782 application, but only "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 259 (2004). Section 1782 expressly reaches "criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a); *see also In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Procs. ("Berlamont")*, 773 F.3d 456, 460–61 (2d Cir. 2014). Respondents nevertheless argue that the Swiss Proceeding is not reasonably contemplated because only Swiss authorities can initiate an investigation. *See* Opp. at 12–14. But UEFA need not control whether an investigation occurs; it need only "provide an objective basis on which to conclude" that it will. *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022). In *Intel* itself, the applicant could lodge a complaint, but the decision whether to pursue it rested with the relevant authorities. 542 U.S. at 254–55; *see also* Supp. Kurz Decl. ¶ 14 (observing that Swiss law affords UEFA "structurally the same [complainant] mechanism" that was available to the applicant in *Intel*). As Respondents acknowledge, UEFA has "retained counsel, issued a preservation notice, and publicly expressed an intention to pursue accountability." Opp. at 8. Through counsel declarations, UEFA has also articulated the alleged misconduct, the prospective target, and the legal theory for its contemplated complaint under the Swiss Criminal Code. *See generally* Kurz Decl.; Supp. Kurz Decl. This is more than sufficient to show that an investigation is reasonably contemplated. *See In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020).[3]

Respondents' contention that Swiss prosecutors have discretion to reject UEFA's

[3] By contrast, in *Mangouras v. Squire Patton Boggs*, on which Respondents rely, the applicant did not articulate a legal or factual predicate for his potential criminal complaint, which he was equivocal about pursuing. 980 F.3d 88, 101 (2d Cir. 2020). UEFA has articulated the predicate for the Swiss Proceeding in detail and intends to file a complaint. *See generally* Kurz. Decl.; Supp. Kurz Decl.

anticipated complaint does not make the Swiss Proceeding speculative. *See* Opp. at 13–14. Their argument rests on a mistaken account of Swiss procedure. Swiss prosecutors are in fact "obligat[ed] to initiate proceedings when they become aware of possible criminal offences prosecuted ex officio . . . and their discretion to decline to prosecute is strictly cabined." Supp. Kurz Decl. ¶ 5; *see also id.* ¶¶ 6–16. "When a private party files a complaint pursuant to Article 301, the prosecuting authorities are *required* to examine the complaint and, where the statutory threshold is met, open an investigation." *Id.* ¶ 8 (emphasis added). Even "[w]here the factual or legal position needs clarification . . . opening is mandatory." *Id.* ¶ 9. The limited circumstances in which prosecutors may decline to initiate proceedings do not apply here. *See id.* ¶ 10.[4]

Respondents misrely on *In re Guryeva-Motlokhov*, 2026 WL 861084 (2d Cir. Mar. 30, 2026) (summary order), which they claim is "directly on point." Opp. at 13. There, the applicant's foreign-law expert conceded that the applicant was merely "*considering* initiating legal proceedings *pending* the requested discovery," and that prosecutors "would investigate her complaint only if the petition is deemed admissible." *Id.* at *2 (citation modified) (emphases in original). Here, by contrast, UEFA is not considering *whether* to pursue action pending the outcome of discovery; it has committed to doing so. Nor does Swiss law condition the opening of an investigation on prosecutorial discretion to deem the complaint "admissible," as explained above. UEFA's Application more than satisfies the Second Circuit's requirement of providing "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Guryeva-Motlokhov*, 2026 WL 861084, at *2 (internal quotation marks omitted).

[4] This case is distinguishable from *IJK Palm*, in which the applicant sought discovery to persuade a company's official liquidators to commence litigation. 33 F.4th at 677–78. UEFA intends to submit the evidence directly to the Swiss criminal authorities, who are then required to investigate and institute criminal proceedings where they are aware of or have grounds for suspecting that an offense has been committed. *See* Supp. Kurz Decl. ¶¶ 8–9.

Respondents next seek to cast doubt on the contemplated proceeding by disputing the viability of a criminal case against Infantino. *See* Opp. at 14–15. But the question here is whether a Swiss investigation is reasonably contemplated, not whether UEFA can establish that a Swiss prosecution will succeed. The Second Circuit has cautioned against "speculative forays into [foreign] legal territories unfamiliar to federal judges" as "a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099–1100 (2d Cir. 1995). But should the Court consider Respondents' arguments, they do not withstand scrutiny. First, Respondents argue that Infantino can only be liable for harming FIFA's interests, not those of UEFA or its members. *See* Opp. at 14. That argument confuses the interests protected by the offense with the right to report it: UEFA need not be the injured party to make a valid complaint. *See* Supp. Kurz Decl. ¶¶ 17–19. Second, Respondents argue that Infantino did not hold a qualifying managerial position, as required by Article 158, because FFE "required support, through participation, from a majority of FIFA's member associations and express approval by the FIFA Council." Opp. at 14–15. However, there is ample evidence that "Infantino exercised *de facto* autonomy and authority, which is all that Article 158 requires." Supp. Kurz Decl. ¶ 21; *see also id.* ¶¶ 22–26.

<u>ii.</u> <u>The Discovery Will Be Received in the Swiss Proceeding</u>

Respondents' argument that UEFA lacks sufficient participatory rights in the Swiss Proceeding fares no better. The "for use" requirement is a "*de minimis*" burden that requires only a showing that "the requested materials 'can be made use of in the foreign proceeding to increase [the applicant's] chances of success.'" *In re Refinería de Cartagena S.A.S.*, 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024) (alteration in original) (quoting *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)). It is met so long as "there are circumstances under which" the foreign

tribunal "could hear" the evidence "regardless of how narrow those circumstances might be." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012).

The Application easily meets this standard. UEFA and its member associations have a right, pursuant to Article 301 of the Swiss Criminal Procedure Code, "to report a suspected offence to the prosecuting authorities by filing a criminal complaint." Supp. Kurz Decl. ¶ 6. The role of a complainant "is a recognized and procedurally meaningful position under Swiss law." *Id.* ¶ 12. Specifically, "the prosecutor *must* receive and process" evidence submitted by complainants, who "also have authority to submit additional information after the initial report." *Id.* (emphasis added); *see also id.* ¶¶ 13–16. Thus, UEFA has rights in and will have ample opportunity to "inject[ ] evidence" into the Swiss Proceeding. *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015).[5]

The contemplated Swiss Proceeding is not, as Respondents argue, "private-evidence gathering." Opp. at 18. Rather, it is an anticipated investigation by Swiss public prosecutors, which qualifies as a "proceeding in a foreign . . . tribunal" under this Circuit's law. *See Berlamont*, 773 F.3d at 460–61. Where, as in this case, a Section 1782 applicant has a "right" to

---

[5] In *Certain Funds*, the court expressly declined to hold that *Intel*-type "participation rights" were required to satisfy Section 1782. 798 F.3d at 119. The court nonetheless found, on the facts of the case before it, that the applicants could not satisfy the "for use" requirement because they could not demonstrate "some means of injecting evidence into the proceeding." *Id.* at 120. By contrast, as discussed above, UEFA has a means of injecting evidence into the Swiss Proceeding.

Respondents cite to several other cases in which the "for use" requirement was satisfied in an attempt to demonstrate what they think is "missing" from the Application—namely, "party" or "would-be party" status. *See* Opp. at 16–17. But *Intel* demonstrates that party status is not necessary. *See Intel*, 542 U.S. at 255. And given UEFA's rights as a complainant to "trigger the prosecutor's obligation to investigate, to be informed . . . of the action taken on its complaint, and to submit . . . information and documentation to the prosecutor both at the time of filing and as the matter proceeds," Supp. Kurz Decl. ¶ 14, UEFA can be fairly described as a "participant" in the Swiss Proceeding.

submit evidence in such an investigation, the "for use" requirement is satisfied. *See In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019) (internal quotation marks omitted), *abrogated on other grounds by In re Guo*, 965 F.3d 96 (2nd Cir. 2020).

**B. UEFA Is an "Interested Person" in the Swiss Proceeding**

UEFA also satisfies Section 1782's "interested person" requirement. Under *Intel*, an "interested person" includes any person with "a reasonable interest in obtaining judicial assistance." *Intel*, 542 U.S. at 256 (citation modified). Respondents cannot credibly argue that UEFA—an association of 55 of FIFA's 211 members endowed with governing authority under FIFA's Statutes—lacks a reasonable interest in the Swiss Proceeding. UEFA holds nine of the 37 seats on the FIFA Council—the body "vested with exclusive authority to decide how FIFA's commercial rights are to be promoted." Kurz Decl. ¶ 11. Infantino's exclusion of the Council from the FFE proposal lies at the heart of the alleged criminal mismanagement that is the basis for UEFA's contemplated complaint.

It is well-established that "a complainant in a criminal investigation satisfies the 'interested person' requirement of § 1782." *Children's Inv. Fund*, 363 F. Supp. 3d at 372 (citing *Berlamont*, 773 F.3d at 457–58); *cf. Intel*, 542 U.S. at 256. Respondents contend that *Children's Investment Fund* and *Intel* are distinguishable because the applicants in those cases had the ability to submit evidence to the investigating agency. *See* Opp. at 18 n.18 & 19. But so does UEFA. *See* Supp. Kurz Decl. ¶ 14; *see also id.* ¶ 12.

UEFA is also an "interested person" as the recognized body through which its member associations act collectively in FIFA's governance. Each of UEFA's members "ha[s] independent standing as [a] complainant[]" under Swiss law. Supp. Kurz Decl. ¶ 6. UEFA is accordingly entitled to represent its members' interests in obtaining this Court's assistance under

Section 1782. *See Certain Funds*, 798 F.3d at 120 (acknowledging that a "recognized relationship, such as that of an agent and principal," can confer "interested person" status).

Respondents cite *In re Brookfield Infrastructure Partners L.P.*, 2025 WL 1503942 (S.D.N.Y. May 27, 2025), for the proposition that only "aggrieved parties" in criminal cases satisfy the interested person requirement. *See* Opp. at 21. But there is no indication that the applicant in *Brookfield*, which considered Peruvian law, possessed the same participatory rights available to UEFA in Switzerland. Rather, *Brookfield* noted that "[u]nder Peruvian law, criminal complainants, without more, do *not* have the right to submit evidence that must be considered by the federal prosecutor . . . ." 2025 WL 1503942, at *8 (emphasis added). Under Swiss law, UEFA "has legal authority to . . . submit . . . information and documentation to the prosecutor both at the time of filing and as the matter proceeds." Supp. Kurz Decl. ¶ 14.

## II. THE INTEL FACTORS WEIGH IN FAVOR OF THE APPLICATION

The Court should exercise its discretion under Section 1782 to grant the requested discovery. All four *Intel* factors favor the Application.[6] *See* App. at 11–14.

### A. Respondents Are Not Expected Participants in the Swiss Proceeding

The first *Intel* factor weighs in favor of the Application. Respondents are not expected to be participants in the Swiss Proceeding. *See* App. at 12. They nonetheless argue that this factor weighs against discovery because (1) "the true source of the requested evidence" is FIFA and Infantino and (2) Swiss authorities can obtain the requested discovery through the U.S.-Switzerland Mutual Legal Assistance Treaty ("MLAT"). Opp. at 21–23. Both arguments fail.

This Application is not seeking information from FIFA or Infantino; it is seeking

[6] Respondents concede that the second factor is "neutral or slightly favors" discovery. Opp. at 23 (internal quotation marks omitted).

information from Respondents. While the first *Intel* factor can weigh against discovery even where the discovery target is not technically a party to the foreign proceeding, that is only true where the discovery is being sought, "for all intents and purposes," from such a party. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004). In the cases Respondents cite, the applicants sought discovery from the law firms and a senior executive of parties to foreign proceedings. *See Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 241 (2d Cir. 2018); *Schmitz*, 376 F.3d at 85; *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 56–57 (2d Cir. 2024). Respondents do not have an analogous relationship to Infantino.

Respondents' argument that the availability of discovery through the MLAT weighs against the Application is foreclosed by binding authority. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 157 (2d Cir. 2022).

**B. The Application Does Not Seek to Circumvent Swiss Restrictions**

The third *Intel* factor favors the Application because UEFA is not attempting to circumvent foreign proof-gathering restrictions. "Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated." *In re Tiberius Grp. AG*, 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020); *see also Mees*, 793 F.3d at 303 n.20 ("Proof-gathering restrictions are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation.") (citation modified). Respondents do not identify any privilege or prohibition applicable to the requested discovery, which is dispositive as to this factor.[7]

Respondents' arguments to the contrary lack merit. Respondents contend that, by

[7] Respondents also do not assert "improper or bad faith evasion" by UEFA. *See* App. at 13; Opp. at 25. This alone is sufficient to tip the third factor in UEFA's favor. *See, e.g.*, *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018).

seeking Section 1782 discovery prior to commencement of the Swiss Proceeding, UEFA is attempting to "bypass[ ] the Swiss allocation of investigative authority and the safeguards governing its exercise." Opp. at 24. *Mees* forecloses this argument. Respondents do not contend that Swiss rules "prohibit the acquisition or use" of the requested discovery, simply that Swiss rules "fail to facilitate" it. *Mees*, 793 F.3d at 303 n.20 (citation modified); *see also id.* at 303 (no requirement under Section 1782 to first seek discovery in foreign proceeding). Respondents also ignore the fact that UEFA has authority to submit evidence to the Swiss prosecutor, which the prosecutor "must receive and process," Supp. Kurz Decl. ¶ 12, and that Section 1782 discovery "is neither inadmissible nor otherwise disfavored under Swiss law." *Id.* ¶ 13; *see also id.* ¶ 15–16.

Respondents also contend that the Application is an attempt to circumvent provisions of FIFA's governing statutes that require FIFA and its confederations to arbitrate certain disputes. Opp. at 4–5, 25–26. But (1) the contemplated Swiss Proceeding is not a dispute with FIFA; it is targeting Infantino (and potentially other FIFA officials); and (2) the provisions in question reach only football-related disputes among enumerated stakeholders and exclude matters where "binding legal provisions specifically provide for or stipulate recourse to ordinary courts of law." Levander Decl. Ex. 3, Arts. 49–51. The contemplated Criminal Proceeding is an excluded matter: it is prosecuted by the Swiss state, not UEFA, under a binding Swiss criminal-law provision that channels it to ordinary Swiss courts.

### C. The Subpoenas Are Not Unduly Intrusive or Burdensome

The fourth *Intel* factor favors discovery because the requested discovery is relevant and Respondents have not demonstrated burden. Under this factor, Respondents cannot rely on general or conclusory challenges to the requested subpoenas. *See In re Youngpoong Corp.*, 2025

WL 3228034, at *5 (S.D.N.Y. Nov. 19, 2025) (Vargas, J.). They must make specific arguments regarding "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Id.* (internal quotation marks omitted). Respondents must "demonstrate how each request is irrelevant or overbroad" and "present particularized evidence in their briefing that production would be unduly burdensome or costly." *Children's Inv. Fund*, 363 F. Supp. 3d at 373 (citation modified).

Respondents offer only general objections, identifying just a handful of requests they find objectionable, while making no effort to demonstrate burden. *See* Opp. at 26–29. That was a choice, not an oversight. Rather than raising request-specific objections, Respondents have elected to attack the Application wholesale while presumably holding specific objections in reserve, to be deployed only if the Court grants relief.

The objections Respondents do make are meritless.[8] First, the subpoenas are not overbroad. "FFE's development, financing, governance, promotion, withdrawal, and any purported efforts to revive [it]," Opp. at 27, are all relevant to the Swiss Proceeding. *See* App. at 9–11. So too are other documents concerning Infantino or FIFA, *see* Opp. at 27, which are important context for understanding FFE.

Second, UEFA is not seeking cumulative or duplicative discovery. The document subpoenas to Erdoes and Menell exclude from their scope any materials produced by JPMorgan. *See* Kim Decl. Ex. 19, Att. A at 2; Kim Decl. Ex. 21, Att. A at 2. Moreover, UEFA has no objection to JPMS and JPMCB de-duplicating against one another's collections or productions,

---

[8] In the event the Court finds the subpoenas overbroad, the Court should narrow them or order the parties to meet and confer, not deny the Application. *See Mees*, 793 F.3d at 302.

nor does it object in principle to conducting a single corporate deposition, provided the deponent is designated and prepared to testify on both entities' behalf.[9]

Third, UEFA's "discovery on discovery" requests are proper. On July 31, 2026, UEFA sent a preservation notice to JPMorgan Chase, requesting confirmation that it was preserving relevant materials. Bolz Decl. ¶ 4. UEFA never received such confirmation. *Id.* Accordingly, UEFA has a basis to explore whether Respondents took appropriate steps to preserve relevant materials. *See Freedman v. Weatherford Int'l Ltd.,* 2014 WL 4547039, at *1 (S.D.N.Y. Sept. 12, 2014). UEFA is also entitled to know the search criteria Respondents use to respond to UEFA's requests. *See William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,* 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI.").

[9] Obtaining individual testimony from Erdoes and Menell is appropriate and not duplicative. *See Sabre v. First Dominion Cap., LLC*, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) (noting difference between individual and 30(b)(6) testimony).

## CONCLUSION

For the foregoing reasons, the Court should grant UEFA's Application.

Dated: October 29, 2026
New York, New York

Respectfully submitted,

*/s/ Rebecca S. Tinio*
Edward Y. Kim
Rebecca S. Tinio
Jonathan F. Bolz
KKL LLP
350 Fifth Avenue, 77th Floor
New York, New York 10118
(212) 390-9550
Edward.Kim@KKLllp.com
Rebecca.Tinio@KKLllp.com
Jonathan.Bolz@KKLllp.com

*Counsel for Applicant Union des Associations Européennes de Football (UEFA)*

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this Memorandum of Law contains 3,499 words and complies with the word count limitations.

*/s/ Rebecca S. Tinio*
Rebecca S. Tinio