**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL (“UEFA”) FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Case No. 1:26-mc-00436-JAV |

**FIFA (AMERICAS) INC. AND FWC2026 US, INC.’S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 4

I. RECENT DEVELOPMENTS ILLUSTRATE THAT MANDATORY INTERVENTION IS WARRANTED AND THE COURT APPLIED THE WRONG LEGAL STANDARD. ..... 5

A. Following FIFA U.S.'s Motion, UEFA Has Taken Inconsistent Positions that Prejudice FIFA U.S. ..... 5

B. The Court Applied the Wrong Legal Standard In Its Mandatory Intervention Inquiry ..... 8

II. THE COURT SHOULD RECONSIDER ITS APPLICATION OF THE LEGAL STANDARD FOR PERMISSIVE INTERVENTION ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*,
No. 05-CV-6998, 2006 WL 3161647 (S.D.N.Y. Oct. 30, 2006) ....................10

*In re Benzaquen*,
No. 25-MC-506, 2026 WL 3438586 (S.D.N.Y. Nov. 11, 2026) ....................11

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001) ....................5, 9

*Bridgeport Guardians v. Delmonte*,
602 F.3d 469 (2d Cir. 2010) ....................8

*Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*,
No. 14-CV-5227, 2015 WL 5676786 (E.D.N.Y. Sept. 24, 2015) ....................3, 9

*ExpertConnect, LLC v. Fowler*,
No. 18-cv-4828, 2018 WL 11264885 (S.D.N.Y. July 25, 2018) ....................4

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ....................10

*Md. Cas. Co. v. W.R. Grace & Co.*,
No. 88-CV-4337, 1996 WL 34154 (S.D.N.Y. 1996) ....................9

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
27 F.4th 792 (2d Cir. 2022) ....................3, 8

*Olson v. Major League Baseball*,
29 F.4th 59 (2d Cir. 2022) ....................4

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) ....................4

*Ventura-Nieves v. United States*,
No. 16-CV-8802, 2017 WL 2061394 (S.D.N.Y. May 12, 2017) ....................5

**Statutes**

28 U.S.C. § 1782 ....................9, 10

**Rules**

Fed. R. Civ. P. 24(a) ....................5

Fed. R. Civ. P. 24(a)(2) ....................3, 5, 9, 11

Fed. R. Civ. P. 24(b) ....................4

Fed. R. Civ. P. 24(b)(1)(B) ....................4, 10, 11

Fed. R. Civ. P. 59 ....................1

Fed. R. Civ. P. 59(e) ....................4

Fed. R. Civ. P. 60 ....................1

Fed. R. Civ. P. 60(b) ....................4

Local Civ. R. 6.3 ....................1, 4

FIFA (AMERICAS), Inc. and FWC2026 US, Inc. (together, "FIFA U.S.") respectfully move for reconsideration of the Court's Opinion and Order (the "Order," ECF No. 22 (1:26-mc-00431-JAV) ("Thrive Action") and ECF No. 29 (1:26-mc-00436-JAV) ("JPM Action")) on FIFA U.S.'s Motions to Intervene (the "Motion" or "Mot.," ECF No. 14 (1:26-mc-00431-JAV) and ECF No. 9 (1:26-mc-00436-JAV)) pursuant to Federal Rules of Civil Procedure 59 and 60 and Local Civil Rule 6.3.

## PRELIMINARY STATEMENT

FIFA U.S. does not seek this relief lightly or to relitigate its past arguments. FIFA U.S. nevertheless is compelled to alert the Court to intervening developments and address aspects of the Court's ruling that are contrary to controlling Second Circuit law. Facts not before the Court at the time FIFA U.S. briefed its Motion demonstrate that FIFA U.S. satisfies the mandatory intervention standard. Even if not, permissive intervention is warranted.

*First*, since FIFA U.S. filed its Motion (only two business days after UEFA filed its Application), UEFA has presented positions here inconsistent with its positions in the Southern District of Florida and in the District of Colorado, even though its applications across all these courts are virtually identical. This is precisely the type of litigation gamesmanship that requires mandatory intervention for FIFA U.S., which will otherwise be prejudiced by its exclusion.

For example, UEFA argued to this Court that FIFA U.S. is an irrelevant "non-party" interested "in the confidentiality of someone else's records." *See* JPM Action ECF No. 18 at 9. But UEFA told the Southern District of Florida that FIFA U.S. is "among the entities best positioned to know" about FFE and sought FIFA U.S.'s documents, *see* Florida Action[1] ECF No.

[1] *In re Application of Union des Associations Européennes de Football ("UEFA")*, No. 1:26-cv-25872-JEM (S.D. Fla.) ("Florida Action").

1 at 3. Also contrary to its representations in this Court, UEFA **does** seek documents that concern FIFA U.S. UEFA's draft document subpoenas, including those it seeks this Court's permission to serve, define "FIFA" to include its "subsidiaries and affiliates,"[2]—even though UEFA's opposition suggested that only documents concerning FIFA were at issue. JPM Action ECF No. 18 at 9 (referring to "a non-party's interest . . . in the confidentiality of someone else's records").[3]

UEFA's inconsistent positions are not limited only to FIFA U.S.'s interest in these proceedings. UEFA has also taken inconsistent positions regarding the scope of its contemplated Swiss criminal proceedings, which serve as the basis for each of its four applications, as well as inconsistent positions as to what legal rights it possesses in Switzerland. In opposition to UEFA's Application, JP Morgan is relying on FIFA U.S.'s Swiss law expert, Professor Alain Macaluso. In response, UEFA relies on the supplemental declaration of its Swiss lawyer, André Kurz, which was previously filed in the Florida Action. This Court is now poised not only to decide the same legal questions at the center of the Florida Action (and the Colorado Action), but it will also weigh Prof. Macaluso's opinions against those of UEFA's Swiss lawyer.

Despite relying on the same evidence here and in Florida, UEFA has taken inconsistent positions with respect to Swiss law. For example, and contrary to its position here, UEFA admitted in the Florida Action that it *did not* have the ability to compel Swiss prosecutors to open proceedings. *See* Florida Action ECF No. 28 at 2 ("Nor does it matter that UEFA cannot itself compel the opening of a Swiss criminal proceeding."). And while UEFA told the Florida court

---

2 *See, e.g.*, JPM Action ECF No. 2-31 at 2; Thrive Action ECF No. 2-159 at 2.

3 UEFA has already sought to benefit from these inconsistent positions, submitting this Court's intervention order to the District of Colorado, demonstrating that the matters are inextricably intertwined. *See In re Application of Union des Associations Européennes de Football ("UEFA")*, No. 1:26-MC-00158-NYW-TPO (D. Colo.) ("Colorado Action"), ECF No. 28.

that it "does not presently claim" to be an "aggrieved party" under Swiss law, its Reply here invokes participation rights that Swiss law confers only on aggrieved parties. *Compare id.* at 5, *with* Reply at 5 & n.5. Certainly, a decision from this Court implicating the Swiss law experts' opinions as to overlapping legal issues may have a practical effect on FIFA U.S.'s parallel litigation. Indeed, if the Court wants to hear testimony from these experts, FIFA U.S. should be present. These intervening factors far exceed the minimum showing required to demonstrate that FIFA U.S.'s interest, as a "practical" matter, Fed. R. Civ. P. 24(a)(2), may be impaired without its participation.

*Second*, the Court applied too narrow a legal standard for mandatory intervention. While FIFA U.S. must show a direct, substantial, and legally protectable interest, FIFA U.S. need not show a legal entitlement to the property or transaction that is the subject of the dispute. The Court's inquiry, which asked whether FIFA U.S. was the target of foreign criminal proceedings, whether FIFA U.S.'s documents were at issue, and whether FIFA U.S. was a distinct legal entity from FIFA, effectively applied a "legal entitlement" test. The Second Circuit has "caution[ed] against requiring that a proposed intervenor identify a narrow interest amounting to a legal entitlement." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 801 (2d Cir. 2022). UEFA's admissions make plain that it considers FIFA U.S.'s interests as separate from FIFA's, and therefore, sufficient to independently satisfy the standard for mandatory intervention. In addition, the adjudication of overlapping issues in multiple litigations affecting the putative intervenor also satisfies the mandatory intervention standard. *See Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, No. 14-CV-5227, 2015 WL 5676786, at *12 (E.D.N.Y. Sept. 24, 2015).

*Third*, although FIFA U.S. should be permitted to intervene under the mandatory intervention standard, intervention is also warranted under the permissive intervention standard of Rule 24(b), which "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). FIFA U.S. argued that it was embroiled in a dispute with UEFA with "common questions of law or fact" in Florida. *See* JPM Action ECF 10 at 13-14; Thrive Action ECF 15 at 13-14. The Court did not address that argument. Finally, FIFA U.S. does not seek, and has never sought, to delay these proceedings. Its Motion, which was filed promptly, sought to file an opposition by September 30, the exact same briefing schedule requested by JP Morgan. Now that the briefing has closed, FIFA U.S. does not seek to put in further papers on the JP Morgan Application but instead will join JP Morgan's opposition and seeks to participate in both of these proceedings going forward.

## ARGUMENT

Federal Rules 59(e) and 60(b) authorize a party to file a motion for reconsideration in the form of a motion to amend or alter a judgment (Rule 59(e)) or a motion for relief from a judgment (Rule 60(b)). *See, e.g.*, *Olson v. Major League Baseball*, 29 F.4th 59, 72 (2d Cir. 2022); *see also* Local Civ. R. 6.3. Reconsideration is warranted, among other reasons, "when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *ExpertConnect, LLC v. Fowler*, No. 18-cv-4828, 2018 WL 11264885, at *1 (S.D.N.Y. July 25, 2018) (internal quotation marks omitted). Reconsideration is also proper where the moving party can point to authority that "might reasonably be expected to alter the conclusion reached by the court," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), or when issues raised in the parties' briefing are not addressed in

the court's decision. *See Ventura-Nieves v. United States*, No. 16-CV-8802, 2017 WL 2061394, at *1-2 (S.D.N.Y. May 12, 2017).

## I. RECENT DEVELOPMENTS ILLUSTRATE THAT MANDATORY INTERVENTION IS WARRANTED AND THE COURT APPLIED THE WRONG LEGAL STANDARD.

Federal Rule of Civil Procedure 24(a) provides for mandatory intervention where the putative intervenor "claims an interest relating to the property or transaction" and "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). The test does not require that the movant show a legal entitlement in connection with the dispute; it need only show "an interest *relating to* the property or transaction which is the subject of the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) (emphasis added) (quoting Fed. R. Civ. P. 24(a)(2)).

### A. Following FIFA U.S.'s Motion, UEFA Has Taken Inconsistent Positions that Prejudice FIFA U.S.

Recent developments demonstrate that FIFA U.S. has a direct interest in this action, which would be practically impaired were it not permitted to intervene. UEFA has taken inconsistent positions across the different jurisdictions in a manner that prejudices FIFA U.S.[4] For example, to defeat FIFA U.S.'s motion to intervene, UEFA characterized FIFA U.S. as "a non-party" interested "in the confidentiality of someone else's records." JPM Action ECF No. 18 at 9. But in the Florida Action, UEFA told the court that FIFA U.S. is "among the entities best positioned to know" about FFE. *See* Florida Action ECF No. 1 at 3.

---

[4] FIFA U.S. understood that the Court did not grant it leave to file a reply. After FIFA U.S. filed its opening brief, the Court issued a docket order which said only that "Petitioner Union des Associations Européenes de Football is hereby ORDERED to file a response to" FIFA U.S.'s Motion "on or before September 10, 2026." *See* JPM Action ECF No. 12. The docket order was silent as to any reply brief. Indeed, the Court subsequently made clear in an order concerning another motion that a reply brief was permitted. *See* JPM Action ECF No. 24.

And notwithstanding its suggestion to the contrary, UEFA ***does*** seek communications from FIFA U.S. in this Court. UEFA's draft subpoenas define "FIFA" to include "subsidiaries and affiliates." *See, e.g.*, JPM Action ECF No. 2-29 at 2; Thrive Action ECF No. 2-159 at 2*; see also* Colorado Action ECF No. 2-8, Ex. 158 at 2. The subpoenas then seek "[a]ll . . . [d]ocuments and [c]ommunications [c]oncerning Infantino or FIFA." *See, e.g.*, JPM Action ECF No. 2-29 at 12; Thrive Action ECF No. 2-161 at 10. Thus, any communications between JP Morgan or Thrive, on the one hand, and FIFA U.S., on the other hand, concerning "FIFA" are included in UEFA's sprawling draft requests.

While the Court noted that "[t]he parent-subsidiary relationship between FIFA and the US FIFA parties, standing alone, does not provide the requisite legal interest," Order at 6, UEFA's admissions make clear that FIFA U.S.'s interest here is not derivative of FIFA's interest. That UEFA's draft requests may also cover discovery from the Swiss FIFA entity should not serve as a basis to prevent FIFA U.S. from protecting *its own* interests.

UEFA has also taken inconsistent positions regarding the scope of its contemplated criminal proceedings. The Court credited UEFA's narrow description of the scope of its "contemplated" criminal proceedings in its Opposition, notwithstanding more expansive descriptions it has provided elsewhere. *See* Order at 5 ("UEFA seeks discovery for use in a contemplated Swiss criminal proceeding against Infantino and possibly other FIFA officials for criminal mismanagement under Article 158 of the Swiss Criminal Code."). But UEFA has made clear that its "contemplated" Swiss criminal proceedings are boundless, encompassing "[Gianni] Infantino and other FIFA officials and advisors for criminal mismanagement under Article 158 of the Swiss Criminal Code *and such further or alternative charges as the developed factual record may support* . . . ." Thrive Action ECF No. 8 at 3 (emphasis added); JPM Action ECF No. 2-28 ¶

15 (similar). Put another way, UEFA contemplates criminal charges against anyone and everyone; it all depends on what it finds through its indiscriminate fishing expedition across four actions.

UEFA also seeks to undermine the opinions of FIFA U.S.'s Swiss law expert before this Court. In support of its opposition to UEFA's Application, JP Morgan relied on the declaration of FIFA U.S.'s Swiss law expert, Professor Macaluso, which FIFA U.S. previously submitted in the Florida Action. *See* JPM Action ECF No. 26 ("Han Decl."), Ex. 1 ("Macaluso Decl."); *see also* Florida Action ECF 27-1. UEFA responded, and it submitted the supplemental declaration of its Swiss lawyer, André Kurz, which it also had submitted a month earlier in the Florida Action. *See* JPM Action ECF No. 28 ("Bolz Decl."), Ex. 1 ("Supp. Kurz Decl."); *see also* Florida Action ECF 28-1. Thus, the same Swiss law evidence is before this Court as is before the Southern District of Florida.[5]

Despite relying on the same evidence here and in the Florida Action, UEFA has taken inconsistent positions with respect to Swiss law. For example, in the Florida Action, UEFA expressly acknowledged that it *did not* have the ability to compel Swiss prosecutors to open proceedings. *See* Florida Action ECF No. 28 at 2 ("Nor does it matter that UEFA cannot itself compel the opening of a Swiss criminal proceeding."). Yet in its Reply before this Court, UEFA claimed that it has "rights as a complainant to 'trigger the prosecutor's obligation to investigate'" criminal targets (it does not). *See* JPM Action ECF No. 27 at 5 n.5. And while UEFA said in the Florida Action that it "does not presently claim" to be an "aggrieved party" under Swiss law, its

---

[5] Further illustrating the overlap of issues in these actions and the Florida Action, UEFA opposed JP Morgan's motion for leave to file a sur-reply, and criticized JP Morgan for not addressing the Supplemental Kurz declaration that was on file in Florida, but not here, when JP Morgan filed its opposition to the Application. JPM Action ECF No. 32 at 2. UEFA's critique is more evidence that the pendency of the Florida Action against FIFA U.S. gives FIFA U.S. a direct, substantial and legally protectable interest here.

Reply here invokes participation rights that Swiss law confers only on aggrieved parties. *Compare* Florida Action ECF No. 28 at 5, *with* JPM Action ECF No. 27 at 5 & n.5.

While FIFA U.S. was aware that JP Morgan would rely on FIFA U.S.'s Swiss law expert declaration, FIFA U.S. is better positioned to defend the opinions of its expert. And FIFA U.S. should be permitted to participate if the Court wishes to hear from that expert.[6] This Court should not reach a decision implicating the credibility or weight of the opinions of the Swiss law experts without affording FIFA U.S. the opportunity to be heard.

### B. The Court Applied the Wrong Legal Standard In Its Mandatory Intervention Inquiry

In holding that FIFA U.S. failed to satisfy the requirements for mandatory intervention, the Court relied on three facts: (1) that FIFA U.S. did not claim in its opening brief that the documents at issue were in its custody, (2) that FIFA U.S. was not the subject of the "contemplated" criminal proceedings in Switzerland, and (3) that the FIFA U.S. entities were legally separate from FIFA. *See* Order at 4-7. This inquiry was far too exacting and contrary to the mandatory intervention standard, particularly in light of the intervening facts above.

While the movant must show a "direct, substantial, and legally protectable" interest for mandatory intervention, *Bridgeport Guardians v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (internal quotation marks omitted), that test is not tantamount to requiring a legal entitlement in the property at issue. The Second Circuit has reversed denials of intervention motions on similar grounds, "caution[ing] against requiring that a proposed intervenor identify a narrow interest amounting to a legal entitlement." *N.Y.C. Policing*, 27 F.4th at 801. Instead, the movant need

---

[6] In denying intervention, the Court did not address whether FIFA U.S.'s interest was adequately represented by the other parties. Neither JP Morgan nor Thrive adequately represents FIFA U.S.'s interest. *See* JPM Action ECF No. 10 at 12-13; Thrive Action ECF No. 15 at 13.

only show "'an interest *relating to* the property or transaction [that] is the subject of the action.'" *Brennan*, 260 F.3d at 130 (emphasis added) (quoting Fed. R. Civ. P. 24(a)(2)).

Given UEFA's inconsistent positions that were presented after FIFA U.S. filed its Motion, it is clear that the mandatory intervention standard is met. UEFA's draft subpoenas seek documents with and concerning FIFA U.S. And UEFA's sprawling recitation of who may fall within its contemplated criminal proceeding does not exclude FIFA U.S. officials. Indeed, if FIFA U.S. were as irrelevant as UEFA conveyed to this Court (directly contrary to how it portrayed FIFA U.S. in the Florida Action), then it should withdraw its application in the Florida Action and exclude FIFA U.S. from the definition of FIFA in the draft subpoenas it hopes to serve here and in Colorado.

In addition, adjudication of overlapping issues in multiple litigations affecting FIFA U.S. also satisfies the mandatory intervention standard. *See Certified Multi-Media*, 2015 WL 5676786, at *12 (granting mandatory intervention where putative intervenors would "in all likelihood, revisit the same issues" in another litigation that are "central to a determination in this case" and their interests "may well be prejudiced" in a subsequent action); *Md. Cas. Co. v. W.R. Grace & Co.*, No. 88-CV-4337, 1996 WL 34154, at *2 (S.D.N.Y. 1996) (granting mandatory intervention where putative intervenors "*might* suffer practical disadvantage from decisions issued in this case if they attempted to relitigate the issues in a later action" (emphasis added)).

The impairment inquiry is a "practical" one. Fed. R. Civ. P. 24(a)(2). And practically speaking, adverse decisions in this action without FIFA U.S.'s participation would prejudice FIFA U.S. Common questions of law and fact pervade all of these actions, such as whether UEFA has the ability to compel a Swiss prosecutor to commence a criminal proceeding or investigation (it doesn't) and whether UEFA would have any role in such a proceeding if a Swiss prosecutor

decided to institute it (it wouldn't). These and other questions go to the heart of whether UEFA can satisfy the statutory requirements of Section 1782. The prevailing party in this Court will undoubtedly seek to rely on this decision as persuasive authority in the Florida Action and in the Colorado Action, as demonstrated by UEFA's "notice of supplemental authority" providing this Court's intervention order to the District of Colorado. *See* Colorado Action ECF No. 28. FIFA U.S.'s interest here is therefore neither contingent nor indirect. It would be prejudiced were this Court to adjudicate legal issues relevant to FIFA U.S.'s actions, adjudicate issues relevant to FIFA U.S.'s documents, or adjudicate issues relevant to FIFA U.S.'s Swiss law expert. It should be permitted to intervene under the mandatory intervention standard.

## II. THE COURT SHOULD RECONSIDER ITS APPLICATION OF THE LEGAL STANDARD FOR PERMISSIVE INTERVENTION

The Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court did not address that part of the legal standard in its permissive intervention analysis.

Here, common questions of law and fact abound. The legal questions are identical: whether UEFA's applications for discovery in aid of non-existent Swiss proceedings meet the statutory factors under § 1782 and discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (they do not). The facts are likewise identical: they involve the same applicant, the same transaction, and the same contemplated Swiss proceeding. FIFA U.S. raised this argument, *see* JPM Action ECF 10 at 13-14, but the Court did not address it. Reconsideration is warranted when the Court does not consider an argument raised in the movant's brief. *See Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, No. 05-CV-6998, 2006 WL 3161647, at *1-2 (S.D.N.Y. Oct. 30, 2006).

The Court denied FIFA U.S.'s request for permissive intervention principally on the basis that granting it would delay and, "*ipso facto*, unduly prejudice UEFA." Order at 8. But FIFA U.S. moved to intervene only two business days after UEFA filed its application. UEFA conceded that the Motion "was filed promptly." JPM Action ECF No. 18 at 11. *See In re Benzaquen*, No. 25-MC-506, 2026 WL 3438586, at *3 (S.D.N.Y. Nov. 11, 2026) (finding no delay and allowing permissive intervention where motion was filed "a little more than three weeks" after the application). And importantly, FIFA U.S. sought to participate on the exact same briefing schedule as also requested by JP Morgan. Because briefing has now concluded, FIFA U.S. does not seek to put in additional papers in opposition to the Application in the JPM Action, but rather, will join JP Morgan's opposition. It only seeks to intervene so that it can participate fully as both actions proceed, including in the event the Court decides to hold a hearing.

## CONCLUSION

For the foregoing reasons, FIFA U.S. respectfully requests that the Court grant its motion for reconsideration and grant FIFA U.S.'s motions to intervene under Rule 24(a)(2) or, alternatively, Rule 24(b)(1)(B).

Dated: New York, New York
November 19, 2026

Respectfully submitted,

By: */s/ H. Christopher Boehning*

H. Christopher Boehning
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
chris.boehning@linklaters.com

*Counsel for proposed Intervenors FIFA (AMERICAS) Inc. and FWC2026 US, Inc.*

## CERTIFICATION

I hereby certify that the number of words in this memorandum of law is 3,499, excluding the caption, table of contents, table of authorities, and signature block; that this number was reached by reliance on a word counter of the word-processing program used to prepare the document; and that this complies with the Court's word count limit.

Dated: New York, New York
November 19, 2026

Respectfully submitted,

By: */s/ H. Christopher Boehning*

H. Christopher Boehning
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
chris.boehning@linklaters.com

*Counsel for proposed Intervenors FIFA (AMERICAS) Inc. and FWC2026 US, Inc.*